UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL COOK,

        Plaintiff,

v.

MICHIGAN DEPARTMENT
OF CORRECTIONS, *et al.*,

        Defendants.
_____/

Case No. 1:21-cv-817

Hon. Jane M. Beckering

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by Daniel Cook (referred to as "plaintiff" or "Cook"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). The only remaining defendant is Warden John Davids. This matter is now before the Court on defendant Davids' motion for summary judgment for lack of exhaustion (ECF No. 30).

    **I.**    **Cook's allegations**

The incident at issue occurred at the Ionia Correctional Facility (ICF).

Plaintiff alleges that during August of 2021, the water in his cell was contaminated with impurities that made it unhealthy to drink. Plaintiff claims that drinking the water caused him significant pain. Plaintiff contends that he informed unit staff and healthcare staff but everyone offered the same advice: "keep running your water, it will clear." (Compl., ECF No. 1, PageID.6.) Plaintiff states that he would run his water again and again and again, to no avail. It did not clear, and consuming it continued to cause him pain.

Plaintiff suggests that Defendant Davids is responsible for the water problem because, on August 10, 2021, Plaintiff mailed him a kite describing the water problem, but the problem was not fixed. (*Id.*) A week later, Plaintiff encountered Defendant Davids in a Security Classification Committee meeting. (*Id.*, PageID.7-8.) Plaintiff advised Davids of the problem. Davids told Plaintiff to continue to run the water and that it would clear.

> Plaintiff indicates that he sent a kite to Defendant [MDOC Director] Washington regarding the water problem on August 25, 2021. (*Id.*, PageID.10-11.) That day, coolers of filtered water were brought into the unit. (*Id.*, PageID.14.) The next day, Plaintiff was informed that the filters were being changed and Plaintiff was brought water to take his medication. (*Id.*, PageID.15.) According to Plaintiff, the changed filters did not remedy the problem. On September 1, 2021, Plaintiff was transferred to MBP [Marquette Branch Prison].
>
> Plaintiff claims the actions (or inactions) of Defendants violated Plaintiff's Eighth Amendment rights and also constituted torts under state law. Plaintiff asks the Court to: (1) provide declaratory relief; (2) enjoin Defendants to issue a policy directive to address the water crisis, provide an alternative water source if and when the problem arises again, install a better water filtration system, and preclude Defendants from housing Plaintiff at ICF; and (3) award millions of dollars in compensatory and punitive damages.

Opinion (ECF No. 12, PageID.67-68). On initial screening, the Court dismissed all claims except "[p]laintiff's Eighth Amendment and state law tort claims against Defendant John Davids." *See id*. at PageID.76; Order (ECF No. 13).

## II. Legal standard

### A. Summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.     Lack of Exhaustion

#### 1.     Exhaustion requirement

Defendant Warden Davids contends that Cook failed to exhaust his claims against them. The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

3

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### III.    Discussion

In addressing Cook's grievances, the Court is aware that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued" and that "the grievance is not a summons and complaint that initiates adversarial litigation". *Jones*, 549 U.S. at 219, quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). Under PD 03.02.130, a prison official is not alerted to the "problem" being grieved unless that problem is identified by the prisoner listing the "[d]ates, times, places and names of all those involved in the issue being grieved."

As discussed, plaintiff alleged that sometime in August 2021, the water in his cell was contaminated and unhealthy to drink, that he sent a kite about the water to Warden Davids on August 10, 2021, and that a week later (*i.e.*, on or about August 17, 2021) he spoke to the Warden about the water during a Security Classification Committee meeting. Cook was transferred to MBP on September 1, 2021. Defendant Davids points out that while Cook pursued grievances while at ICF, he did not file any Step I grievances at ICF in August or September 2021. *See* MDOC Prisoner Step III Grievance Report (ECF No. 31-3, PageID.155-165). In this regard, Cook filed four grievances at ICF in April, May and June 2021. PageID.152-153.[1] Based on this record, defendant states that "Cook failed to file a Step I grievance on this issue within the timeframe set forth by the MDOC and pursue that grievance through Step III, so he therefore failed to exhaust his administrative remedies against Davids." Defendant's Brief (ECF No. 31, PageID.135).

---

[1] The Court notes that Cook was well aware of the grievance system, having filed 11 grievances during his previous incarceration at ICF in 2019. *See* PageID.154-155, 157. As discussed, *infra*, Cook was disciplined for filing excessive grievances.

In his response, Cook pointed out that he was on modified access during the relevant time period. In a Memorandum dated July 7, 2021, defendant Warden Davids had restricted Cook's ability to file grievances due to Cook's abuse of the grievance system:

> Per PD 03 .02 .13 A prisoner or parolee who files an excessive number of grievances (three within a 30 calendar day span) that are rejected or the prisoner is found guilty of misconduct for filing an unfounded grievance as set forth in Paragraph M, may have access to the grievance process limited by the Warden or FOA Region Manager for an initial period of not more than 90 calendar days. Please be informed that because of your continued abuse of the prisoner grievance process, you have been placed on modified access status by Warden Davids. You are on modified access from **July 08, 2021 through October 06, 2021**.

Memorandum (ECF No. 38-1, PageID.270) (emphasis in original). The memorandum referenced five grievances filed in June and July, 2021. *Id*.

In the November 10, 2022 order denying Cook's request for discovery on the issue of exhaustion (ECF No. 41), the Court addressed Cook's ability to file and exhaust grievances while on modified access:

> In support of his motion, plaintiff included a July 7, 2021 memorandum from defendant Davids which restricted plaintiff's ability to file grievance by placing him on modified access from July 8, 2021 through October 6, 2021. *See* Memorandum (ECF No. 32-2, PageID.171). This memorandum demonstrates that plaintiff was on modified access when he attempted to file a grievance regarding the ICF water situation on August 30, 2021. *See* Grievance Request (ECF No. 1-2, PageID.26-31). Policy Directive 03.02.130 ¶ MM (eff. March 18, 2019) states that a prisoner on modified access may file grievances if he complies with the following procedure:
>
>> While on modified access, the prisoner or parolee shall be able to obtain grievance forms only through the Step I Grievance Coordinator. A grievance form shall be provided if the Step I Grievance Coordinator determines that the issue the prisoner or parolee wishes to grieve is grievable and otherwise meets the criteria outlined in this policy. The Grievance Coordinator shall maintain a record of requests received for grievance forms and whether the request was approved or denied and, if denied, the reason for the denial. If a prisoner or parolee on modified access attempts to file a grievance using a form not provided by the Grievance Coordinator, the Grievance Coordinator may reject the grievance in accordance

6

> with Paragraph J. The Warden, FOA Region Manager, or Manager of the Grievance Section may extend the prisoner's or parolee's modified access status for not more than an additional 30 days for each violation. Notification of such extensions shall be consistent with the requirements set forth in Paragraphs KK and LL.

Policy Directive 03.02.130 ¶ MM.

> If a plaintiff on modified access followed the procedure set out in ¶ MM, and the MDOC denied a request for a grievance form, then "that would be the end of possible administrative remedies with regard to that grievance, and a court would thus have jurisdiction to hear a related federal claim, since all possible administrative remedies would have been attempted." *Walker v. Michigan Department of Corrections*, 128 Fed. Appx. 441, 446 (6th Cir. 2005).
>
> In his motion, plaintiff points out that defendant's motion for summary judgment does not "challange [sic] or argue that the plaintiff failed to follow 'Modified Access' Policies or Procedures." Motion at PageID.167. Attached to plaintiff's complaint is a copy of what purports to be a "Request for a step one grievance form due to modified grievance access" related to the alleged contaminated water at ICF. *See* Grievance Request (ECF No. 1-2, PageID.26-31). The grievance request is dated August 30, 2021, and directed to ICF Grievance Coordinator Yuhas. *Id*. Defendant presented evidence that plaintiff submitted this grievance request and that the request was denied. *See* Matthew Ferguson Aff. (ECF No. 35, PageID.189-190); Grievance Request (Aug. 30, 2021) (ECF No. 35-1, PageID.243-248). Defendant also provided copies of other requests for grievances which were denied. *See* Exhibits (ECF No. 35-1, PageID.225-250).
>
> Upon reviewing this record, the Court finds no need for plaintiff to engage in discovery. The record contains evidence from both parties that plaintiff attempted to file a grievance while on modified access related to alleged contaminated water at ICF on or about August 30, 2021, and that the request was denied. Since plaintiff was on modified access during that time, and he was denied a grievance form, then "that would be the end of possible administrative remedies with regard to that grievance." *Walker*, 128 Fed. Appx. at 446. In short, the record contains the documentary evidence which plaintiff would need to demonstrate exhaustion of this claim. *See id*. At this juncture, the Court finds no reason to delay the case for discovery on the issue of exhaustion. Accordingly, to the extent plaintiff's motion requests discovery, the motion is **DENIED**.

Order (ECF No. 41, PageID.284-286) (emphasis in original).

Based on this record, it is undisputed that while on modified access, Cook requested a grievance form to file a Step I grievance about the water situation and that the MDOC denied his

7

request. *See* Cook's Request (Aug. 30, 2021) (ECF No. 35-1, PageID.243-248). The request referred to both Warden Davids and the alleged contaminated water. For the reasons discussed in the Court's November 10th Order, Cook requested a grievance form regarding the contaminated water while on modified access and the MDOC denied his request. Under these circumstances, Cook "exhausted" his available administrative remedies. *See Walker*, 128 Fed. Appx. at 446.

### IV.  Recommendation

Accordingly, I respectfully recommend that defendant Davids' motion for summary judgment on the basis of exhaustion (ECF No. 30) be **DENIED**. I further recommend that the Court enter an amended Case Management Order setting new pre-trial deadlines.

Dated:  January 9, 2023         /s/ Ray Kent
                                RAY KENT
                                United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).