UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL COOK,

        Plaintiff,

Case No. 1:21-cv-817

Hon. JANE M. BECKERING

v.

MICHIGAN DEPARTMENT
OF CORRECTIONS, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

    This is a *pro se* civil rights action brought by Daniel Cook (referred to as "plaintiff" or "Cook"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). The only remaining defendant is Warden John Davids. This matter is now before the Court on defendant Davids' motion for summary judgment (ECF No. 117).

    **I.**    **Cook's allegations**

    The incident at issue occurred at the Ionia Correctional Facility (ICF).

    Plaintiff alleges that during August of 2021, the water in his cell was contaminated with impurities that made it unhealthy to drink. Plaintiff claims that drinking the water caused him significant pain. Plaintiff contends that he informed unit staff and healthcare staff but everyone offered the same advice: "keep running your water, it will clear." (Compl., ECF No. 1, PageID.6.) Plaintiff states that he would run his water again and again and again, to no avail. It did not clear, and consuming it continued to cause him pain.

    Plaintiff suggests that Defendant Davids is responsible for the water problem because, on August 10, 2021, Plaintiff mailed him a kite describing the water problem, but the problem was not fixed. (*Id.*) A week later, Plaintiff encountered Defendant Davids in a Security Classification Committee [SCC] meeting. (*Id.*, PageID.7-8.) Plaintiff advised Davids of the problem. Davids told Plaintiff to continue to run the water and that it would clear.

1

> Plaintiff indicates that he sent a kite to Defendant [MDOC Director] Washington regarding the water problem on August 25, 2021. (*Id*., PageID.10-11.) That day, coolers of filtered water were brought into the unit. (*Id*., PageID.14.) The next day, Plaintiff was informed that the filters were being changed and Plaintiff was brought water to take his medication. (*Id*., PageID.15.) According to Plaintiff, the changed filters did not remedy the problem. On September 1, 2021, Plaintiff was transferred to MBP [Marquette Branch Prison].
>
> Plaintiff claims the actions (or inactions) of Defendants violated Plaintiff's Eighth Amendment rights and also constituted torts under state law. Plaintiff asks the Court to: (1) provide declaratory relief; (2) enjoin Defendants to issue a policy directive to address the water crisis, provide an alternative water source if and when the problem arises again, install a better water filtration system, and preclude Defendants from housing Plaintiff at ICF; and (3) award millions of dollars in compensatory and punitive damages.

Opinion (ECF No. 12, PageID.67-68). Cook also alleged that defendant committed state law torts of "responde[a]t superior, intentional infliction of emotional distress, negligence, and supervisory negligence." *Id*. at PageID.75. On initial screening, the Court dismissed all claims except "[p]laintiff's Eighth Amendment and state law tort claims against Defendant John Davids." *See id*. at PageID.76; Order (ECF No. 13).

## II. Legal standard

### A. Summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

>  (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Eighth Amendment claim

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and

(2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Here, Cook seeks relief under the Eighth Amendment because he was deprived of drinking water during August 2021. This Court set out the elements of such a claim in the opinion screening plaintiff's complaint:

> The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id*.
>
> For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35-37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id*. at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id*. at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id*. at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety

> may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 844.

Opinion (ECF No. 12, PagID.72-73). Cook was transferred to the Marquette Branch Prison (MBP) on September 1, 2021. *Id*. at PageID.67.

The Court concluded that Cook's allegations appeared to satisfy the objective component of an Eighth Amendment violation:

> The deprivation of drinkable water is sufficiently serious to meet the standard. *See Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006) ("In the abstract, the deprivation of water . . . of course would be 'sufficiently serious.'"); *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017) ("In general, the severity and duration of deprivations are inversely proportional so that . . . substantial deprivations of shelter, food, drinking water, and sanitation may meet the standard despite a shorter duration.") (quoting *DeSpain v. Uphoff*, 264 F. 3d 965, 974 (10th Cir. 2001) (internal quotes omitted).

*Id*. at PageID.73-74.

The Court concluded that Cook's allegations "regarding the subjective element is a closer question," but ultimately allowed the case to proceed against Warden Davids:

> Plaintiff alleges two contacts with Defendant Davids regarding the water issue. First, Plaintiff alleges that he sent Defendant Davids a kite regarding the problem. There is nothing in the complaint to indicate whether Defendant Davids received the kite or how he responded to it. Standing alone, that allegation would not suffice to show that Davids knew of and disregarded an excessive risk to Plaintiff's safety. Plaintiff's contact with Davids during the Security Classification Committee meeting at least permits the inference that Davids was aware of the risk—that the water contamination was causing physical harm to Plaintiff—and disregarded it— by telling Plaintiff to continue running the water to address the problem when Plaintiff told Davids that was not sufficient to provide potable water. Accordingly, the Court concludes that Plaintiff has stated an Eighth Amendment deliberate indifference claim against Davids.

*Id*. at PageID.74.

### C. Discussion

The issue before the Court is whether Cook established the objective and subjective components of an Eighth Amendment claim against Warden Davids.

1.      **Objective component**

There is no question that in August 2021, ICF experienced a water leak and repairs which resulted in sediment being flushed through the correctional facility's water system. On August 6, 2021, ICF Physical Plant Manager Clark was aware of "a leak on our water-main coming into the facility up about food service," that the leak is diverting into a drain," and that "[i]f the leak gets worse it will come thru the Food service ceiling." Clark Email (Aug. 6, 2021) (ECF No. 123-5, PageID.802).

On August 12, 2021, Clark advised some MDOC personnel that the repair was set for the following Monday:

> We have all of the replacement parts for this water leak. We plan on making the repair on Monday the 16th at 0830 to complete this repair. The facility will be without water for about an hour. Whenever we shut water down to a facility we incur a bunch of other issues that is why we are choosing to do this on Monday as opposed to tomorrow before the weekend.

Clark Email (Aug. 12, 2021) (ECF No. 123-5, PageID.802).

Reports of water with sediment reaching the housing units did not occur until August 25, 2021.[1] When the sediment reached the housing units, ICF staff provided water to the

---

[1] While Clark's email referred to a repair made on August 16, 2021, his affidavit referred to a repair made on August 25, 2021:

> 5. The Ionia Correctional Facility had a leak to the water main that brought water into the facility, which occurred sometime in the first half of August 2021.
>
> 6. We had to turn off the main waterline to make the repair on August 25, 2021. Whenever we have to turn off the main waterline, it is not uncommon for some sediment to temporarily make it to the housing units.
>
> 7. On August 25, 2021, it was discovered that some sediment was found in the water coming out in the housing units. Facility staff flushed each housing unit's main water supply to assist in ridding of the resulting sediment. The facility supplied fresh water in water coolers on August 25, 2021, to the housing units to supply the prisoners with water while sediment was in the housing unit water. I made sure housing units regularly flushed the housing unit water lines until the water was cleared.

Clark Aff. (ECF No. 118-5, PagID.706).

prisoners.  *See* Davids Email (Aug. 25, 2021) (ECF No. 123-5, PageID.803).[2]  At 4:57 p.m. on August 25th, Capt. Wood sent MDOC personnel an email regarding "Issuing of Water to Level V Prisoners" which stated as follows:

> Currently there are 2-5 gallon Cambro's in each level V housing unit.  In unit's 1 & 2, each prisoner will be issued 1-styrophone cup to receive water.  Water will be offered to all level V prisoners once per hour and logged in the housing unit logbook.  **However, any prisoner requesting water will immediately be provided with water by staff.**  In unit's 1 & 2, upon request, the gallery officer will fill prisoners cups with water.  In unit's 3, 4 & 5, the officer will either fill the prisoners cup or open the prisoners cell door allowing them to fill their tumbler and return to their cell. The Cambro's will be filled with water at 2100 hours (prior to 3rd shift) and 3rd shift will provide prisoners with water upon any request.  We will reevaluate the water situation in the morning on 1st shift to see if it is necessary to continue this practice.  Sergeants should make at least 2 rounds per shift in each level V unit to ensure Cambro's are filled and water is being issued.  These rounds will be documented in the respective logbook.

Capt. Wood Email (ECF No. 118-6) (emphasis in original).  About 14 hours later, at 6:41 a.m. on August 26th, MDOC employee John Kelley sent an email regarding "Unit water" to defendant and others stating that, "Reports are coming in this morning that the Housing Units cell water is cleared up."  Kelley email (ECF No. 118-7).

In addition, there is no evidence that the water was unsafe to drink.  Water testing from the City of Ionia showed no difference in the safety of the water at ICF during July 2021 through August 2021: samples collected on July 6, 2021 found "Total Coliform Absence"; samples collected on August 3, 2021 found "Total Coliform Absence" and "E.Coli Absence"; and samples

---

[2] In this email, Warden Davids stated:

> ICF had a leak in the main waterline.  It was repaired on Monday August 16th.  The waterline had to be turned off while repairs were completed.  When the waterline was turned on it flushed some sediment into the institutional water lines.  The sediment has now reached the housing units.
>
> We are currently using water coolers to supply fresh to the prisoners cell side. Maintenance flushed the lines today (there was marked improvement) and will do so again tomorrow hoping to clear up the sediment. We will continue to deliver drinking water to the prisoners until the sediment subsides.

Davids Email (Aug. 25, 2021) (ECF No. 123-5, PageID.803).

7

collected on August 25, 2021 found "Total Coliform Absence" and "E.Coli Absence". Water Test Results (ECF No. 118-8).

Finally, Cook's response included an "Affidavit" (ECF No. 123-6) and a "Second Affidavit" (ECF No. 123-15) setting out his version of events. The Court did not consider either document. The "Affidavit" is a hybrid affidavit / declaration which is not sufficient to support a motion for summary judgment,[3] while the "Second Affidavit" states legal conclusions.[4]

Based on this record, there is no evidence from which a jury could reasonably find that the water at ICF was undrinkable commencing on August 10, 2021 until September 1, 2021. In addition, when the water was reported to be discolored in the housing units on August 25, 2021, MDOC officials were aware of the sediment moving through the system and provided the prisoners with drinking water. Accordingly, Cook has not established that he was deprived of drinkable water in violation of the Eighth Amendment.

**2.   Subjective component**

Cook also failed to demonstrate the subjective component of his Eighth Amendment claim against Warden Davids. As discussed on initial screening, Cook's allegation

---

[3] The affidavit / declaration is notarized and states, "Pursuant to 28 U.S.C. § 1746 I Daniel Cook swear that the facts stated in this affidavit are true and correct to the best of my knowledge." PageID.817. Cook's statements, which are based on the "best of my knowledge" do not comply with the requirements of a declaration. *See* § 1746(1) (a declaration must be in substantially the following form, "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct"). Summary judgment cannot be granted when facts are qualified by the statement "to the best of my knowledge." *See SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 139 (2d. Cir. 2009) ("the common expression 'to the best of my knowledge' . . . seems to inject a level of uncertainty into just how sure the declarer is of the truth of the asserted fact"); *Lopez-Carrasquillo v. Rubianes*, 230 F.3d 409, 414 (1st Cir. 2000) (an affidavit which "avers that 'it is correct in all its parts to the best of my knowledge' . . . is insufficient as a proffer of evidence because affidavits submitted in opposition to a motion for summary judgment must be based on the affiants [sic] personal knowledge").

[4] In the Second Affidavit, Cook states that Warden Davids "has the authority to create, implement or change ICF operational procedures," but "does not have the same authority for the MDOC's Policies and Procedures." Second Aff. "Legal conclusions, whether asserted in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial." *Garland v. Smigielski*, No. 1:14-cv-865, 2015 WL 5432770 at *2, fn. 1 (W.D. Mich. Sept. 15, 2015) (citing *Medison America Inc. v. Preferred Medial Systems, Inc.*, 357 Fed. Appx. 656, 662 (6th Cir. 2009) and *Houston v. McDaniels*, No. 1:12-cv-299, 2014 WL 1493402 at * 2 n. 2 (W.D. Mich. April16, 2014)).

that he notified Warden Davids of the situation via a kite on or about August 10, 2021 was not sufficient to establish the subjective element of an Eighth Amendment claim (*i.e.*, "[t]here is nothing in the complaint to indicate whether Defendant Davids received the kite or how he responded to it"). Cook has not presented evidence to address these deficiencies. At his deposition, Cook stated that he did not have a copy of the kite, blaming unidentified individuals for stealing it or losing it:

> Q So you had the kite -- you had a copy of the kite that you sent to Warden Davids, but at this time, you no longer have a copy of that kite; is that correct?
>
> A I do not have a copy of the kite now because they took it. They stole it -- either they stole it, they intentionally lost it, or they accidently lost it. It's not my fault. It's their fault. I feel like they -- I mean, you're not supposed to say, but I feel like they spoiled evidence.
>
> Q Did Warden Davids send you a response to this kite?
>
> A Warden Davids never responds to kites.

Cook Dep. at PageID.691. For his part, Warden Davids had "no recollection of prisoner Cook 290601 sending me a kite in August of 2021 about his body hurting in response to water at ICF." Davids Aff. (ECF No. 118-3, PageID.700).

In addition, Cook claims that Warden Davids was aware of his tainted water based on statements which he made to Davids at a SCC meeting on August 17, 2021. Records reflect that the SCC meeting was not about the water quality Cook's cell. Rather, the meeting was to review Cook's placement in segregation because he could not be managed in the general population. *See* Segregation Behavior Review Form (ECF No. 118-4, PageID.703) (Reason for Segregation Classification: "Inability To Be Managed With GP Privileges"). The incident which prompted the segregation decision was Cook's past conduct ("On 2/21/21 at MBP, Cook was seen exchanging closed fist blows to head and torso of [redacted]"). *Id*. The SCC Review form, dated

August 17, 2021, reflects that Cook participated in the interview, that he was "argumentative during interview, and that the SCC recommended that he continue in segregation. *Id.* There is no record that Cook complained about the water in his cell at that time.

> In his affidavit, Davids stated that,
>
> I have no recollection of prisoner Cook 290601 telling me any water-related issue during a Security Classification Committee meting. I routinely participate in many SCC meetings a month. I typically do not remember the events at any particular SCC meeting unless something out of the ordinary, unique, or impressionable occurs.

Davids Aff. at PageID.700.

Finally, when asked to explain how Warden Davids knew about the alleged tainted water supply in his cell but took no action, Cook did not refer to the kite or the meeting:

> Q My question was, what evidence do you have that shows that Warden Davids didn't even investigate the situation?
>
> A You got my grievances. You got my request for grievances. You got my kites, you know. We got the fact that he never provided sufficient water all the way up until 2- -- what? -- the 25th. On the 25th. I notified him on the 17th that the water was causing me severe pain. And he did not bring now [sic] sufficient water to the unit until the 25th. That's eight days later. I mean, that's evidence right there, that he did not take action. He's the supervisor – he's the superior staff member in like he runs the prison. Right? He's supposed to have -- is ensured that rights and necessities are provided and he did not do that. Eight days I was subjected to unclean, unhealthy water. Eight days.
>
> Q You claim that the water is unhealthy and unsafe. What evidence do you have that supports that the water was, indeed, unclean and unhealthy?
>
> A The water was black as you. When is water that's black as you safe? The water was causing me severe pain. Every time I drink it, it was causing me pain. How is that not evidence? The water caused me to have scabbed eyelids. It caused me to have dry skin. It caused my teeth to feel like it took all of the enamel off of my teeth. I mean, I was having cramps in my muscles. I was having kidney pain like fist-bent -- or fist-clenching kidney pain all through my left side and my right side. I mean, there's all kinds of evidence. When your body is going through serious pain, that's all the evidence you need. That's all the evidence, man. And then it got --
>
> Q What should Davids have done --

> A I got medical –
>
> Q – differently to avoid violating your Constitutional rights then?
>
> A  He should have gave me water. He should have immediately took action. He should have sent me to medical care. . . .

Cook Dep. (ECF No. 118-2, PageID.692-693).

With respect to his alleged symptoms, the record reflects that Cook sought treatment from the LCF healthcare department.  On August 19, 2021, Cook sent a kite to RN Jones complaining of pain:

> Persistent abdomen pain. Everywhere but especially just below sternum bone area and right side. Sore throat. The pain gets worse everytime the water gets darker. Yesterday the water turned near brown as coffee. Additionally I have head aches, pain in left shoulder, and pain behind my tecticles [sic]. Forced stool (pastey), forced gas. I want a PSA blood test.

Cook Med. Kite (Aug. 19, 2021) (ECF No. 123-17, PageID.847).  The Plan/Action for Cook's complaint was to schedule an appointment on or about August 25, 2021. *See id*. ("An appointment will be scheduled for you to be evaluated by health care. Watch your call out for the exact date and time.").

On August 25, 2021, Cook sent a kite to RN Sikkema:

> This water from my cell sink is making my abd pain and headaches worse. Last night I had 3 fist clinching like pains in my left kidney area, and one in my right. I try not to drink it but I have to drink something. The water has been this way for weeks. Please give me a detail for clean water filtered or bottled until the water crisis is fixed. And whatever medical care is necessary.

Cook Med. Kite (Aug. 25, 2021) (ECF No. 123-9, PageID.825).  In the response (Plan/Action), RN Sikkema explained:

> I will schedule a callout for you to be seen by a nurse in the near future. The City of Ionia had to repair pipes about 2 weeks ago. During repairs particulates can be released that color the water that comes out of the faucets. The water does not contain impurities or contaminants. Filters are in place to remove the particulates.

11

> Each unit has these filters and the filters are in the process of being cleaned. The particulates in a filter that has not yet been cleaned will cause the water to have some color to it. Once the filters are cleaned, the water should be clear again. The City of Ionia and MDOC test the water on a monthly basis. I am told that the water will be tested today.

*Id*. Consistent with RN Sikkema's statement, there is no evidence that the water was unsafe to drink. *See* Water Test Results (ECF No. 118-8).

Based on this record, there is no evidence from which a jury could reasonably find that Warden Davids was aware of a risk to Cook's health from contaminated water and that he disregarded that risk. The record further reflects that Cook addressed his medical concerns about the water through the normal channels at LCF. For all of these reasons, Warden Davids should be granted summary judgment on Cook's Eighth Amendment claim.

### IV. State law claims

As discussed, Cook alleged state law claims of "responde[a]t superior, intentional infliction of emotional distress, negligence, and supervisory negligence." Opinion at PageID.75. Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion General Hospital, Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction

should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)).  Dismissal, however, remains "purely discretionary." *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).  Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction.  Accordingly, Cook's state law claims should be dismissed without prejudice.

### V.     Recommendation

Accordingly, I respectfully recommend that defendant Davids' motion for summary judgment (ECF No. 117) be **GRANTED**, that plaintiff's state law claims be **DISMISSED**, and that this action be **terminated**.


Dated:  May 31, 2024                    /s/ Ray Kent
                                        RAY KENT
                                        United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).